# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

---

DEVIN G. NUNES,                                     Related Case No: 5:19-cv-04064-CJW-MAR
                                                                              (N.D. Iowa)
      Plaintiff,

v.

RYAN LIZZA and HEARST MAGAZINE
MEDIA, INC.,

      Defendants.

---

RYAN LIZZA and HEARST MAGAZINE              Case No: 9:22-mc-81070-DMM
MEDIA, INC.,

      Petitioners,

v.

TRUMP MEDIA & TECHNOLOGY
GROUP CORP.,

      Respondent.

---

## RESPONDENT'S OPPOSITION TO PETITIONERS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA

**LIPPES MATHIAS LLP**

Alessandro A. Apolito, Esq.
10151 Deerwood Park Blvd.
Jacksonville, Florida 32256
P: 904-660-0020
F: 904-660-0029
E:  aapolito@lippes.com

Scott S. Allen, Esq., *pro hac vice*
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
P: 716-853-5100
F: 716-853-5199
E: sallen@lippes.com

**Preliminary Statement, Procedural History, and Factual Background**

The matter presently before the Court, and the subject of this Opposition, stems from a defamation lawsuit brought by former United States Congressman Devin G. Nunes, which is presently pending in the United States District Court for the Northern District of Iowa.  *See Nunes v. Lizza, et al.,* No. 5:19-cv-04064-CJW-MAR (N.D. Iowa).  Mr. Nunes's lawsuit alleges that Defendants/Petitioners defamed him and caused him to incur monetary damages, based upon various representations and assertions contained in an Article published in *Esquire* magazine, and the ensuing republication thereof by Defendant/Petitioner Lizza.

In April 2022, Defendants/Petitioners served a subpoena *duces tecum* upon nonparty Respondent, Trump Media & Technology Group, Corp. ("TMTG"), a Delaware Corporation with a principal place of business in Sarasota, Florida, through service upon its registered agent located at 801 US Highway 1, North Palm Beach, Florida.  (Doc. 1-3).  The subpoena sought, *inter alia*, various documents and non-public information concerning Mr. Nunes's employment, recruitment, and engagement as the Chief Executive Officer of TMTG.  On May 27, 2022, TMTG issued its written responses and objections to Petitioners' subpoena.  Thereafter, counsel for both parties met and conferred, and the parties continued to maintain an open dialogue regarding the nature and substance of TMTG's responses, and related matters.

On June 23, 2022, counsel for Petitioners informed TMTG that it "w[ould] be moving to compel production and for an order overruling TMTG's unspecific and uninformative boilerplate objections" and, moreover, that counsel intended "to file the motion next week . . . [unless] TMTG intend[ed] to supplement its responses and produce all responsive documents imminently (*i.e.* in a matter of days, not months or even weeks)." (Doc. 1-3, Ex. K). In response, on the same day,

TMTG advised Petitioners of its position that it had properly responded and/or objected to Petitioners' subpoena and, therefore, stood by its responses and objections, as issued. (Doc. 1-3).

On July 22, 2022, Petitioners filed the pending motion to compel in this Court. (Doc. 1). Notably, the subject motion to compel was filed 29 days after the June 23, 2022 email exchange wherein the parties hereto had last discussed Petitioners' claimed issues with TMTG's responses to the subpoena, notwithstanding Petitioners' representations during that exchange that such motion would be filed "the following week" and that the issue needed to be resolved "in a matter of days" and/or "imminently". (Doc. 1-3, Exhibit K). In this regard, late in the afternoon on July 26, 2022 – the very day that nonparty TMTG's registered agent was actually served with the motion papers – Petitioners filed a corresponding motion seeking an expedited briefing schedule. (Doc. 6). Specifically, Petitioners requested an order of this Court mandating that TMTG fully brief and file its opposition to Petitioners' motion to compel, on or before August 1, 2022. (Doc. 6). On July 29, 2022, TMTG filed its opposition to Petitioners' motion for expedited briefing and adjudication of its motion to compel compliance with its subpoena. (Doc. 12).

On August 1, 2022, the Court granted Petitioners' motion in part and denied it in part. (Doc. 13). Specifically, the Court directed TMTG to file its substantive opposition to Plaintiff's motion to compel on or before August 4, 2022. (Doc. 13). The Court, in turn, designated August 10, 2022, as the deadline for Petitioners to file its corresponding reply brief. (Doc. 13).

However, the subject motion to compel remains procedurally defective, in the first instance, for having not been brought in the District Court in the district wherein the sought documents are located and where TMTG is headquartered. *See* Fed. R. Civ. P. 45(d)(2)(B)(i); Doc. 1-3. As provided by the Florida Division of Corporations records, TMTG maintains its principal offices at 401 N. Cattlemen Road, Suite 200, in Sarasota, Florida, and that is, therefore,

where any responsive documents sought by the subpoena would be located. (Doc. 12-1; Doc. 12-2; Doc. 12-3).  Additionally, Petitioners' subpoena, itself, is defective because it specifies the place of compliance as 2101 Vista Parkway, Suite 4006, West Palm Beach, Florida, which is more than 100 miles away from TMTG's headquarters in Sarasota. *See* Fed. R. Civ. P. 45(c)(2)(A) (identifying a permissible place of compliance for a subpoenaed nonparty as being "a place within 100 miles of where the person resides, is employed, or regularly transacts business in person."). Moreover, pursuant to the Southern District of Florida's Local Rule 26.1(g)(1), Petitioners' motion to compel is also untimely, for having not been brought within thirty days of receipt of (or even conferral with counsel on) TMTG's responses and objections to the subpoena.  L.R. § 26.1(g)(1). In light of these procedural defects, alone, Petitioners' motion to compel should be denied.

Finally, Petitioners' requests are substantively improper and unduly burden TMTG.  As detailed below, they are consistently overbroad in time and scope, facially not relevant and/or not reasonably calculated or tailored to produce relevant information, vague, and/or seeking documents more reasonably and readily available from a party to this lawsuit.  *See generally* Fed. R. Civ. P. § 26(b)(1).  Therefore, Petitioners' requests pursuant to its subpoena directed to nonparty TMTG, and at issue herein, are all wholly objectionable, and - to the extent the Court reaches the merits of Petitioners' motion - warrant quashing or modification.

<u>**Argument**</u>

### I.       Standard of Law

Federal Rule of Civil Procedure 45(d)(2)(B)(i) provides that "[a]t any time, on notice to the commanded person, the [subpoena] serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).  Motions to compel responses in connection with a Rule 45 subpoena are governed

by Fed. R. Civ. P. 37(a), which provides that "[a] motion for an order to a nonparty must be made in the court where the discovery is or will be taken."  Fed R. Civ. P. 37(a); *see also Rink v. VICOF II Trust,* 2021 WL 317941, *3 (W.D.N.C. July 27, 2021); *Europlay Capital Advisors, LLC, v. Does,* 323 F.R.D. 628, 629 (C.D. Cal. 2018).  Furthermore, "[a] subpoena made on a non-party must state the place where compliance is required, which must be within 100 miles of where the subpoenaed non-party resides, is employed, or regularly transacts business in person." *Koenig v. Johnson,* 2020 WL 635772, *1 (D.S.C. Feb. 11, 2020); Fed. R. Civ. P. 45(c)(1)(A).

Pursuant to Fed. R. Civ. P. 45, "a court may quash or modify a subpoena if it (1) fails to allow a reasonable time for compliance; (2) requires a person who is not a party to travel more than 100 miles from where the person resides; (3) requires disclosure of privileged or protected matter; or (4) subjects a person to undue burden." *TIC Park Centre 9, LLC, v. Cabot,* 2017 WL 9988745, *2 (S.D. Fla. June 9, 2017) (quoting *Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 817-18 (5th Cir. 2004)).  "Whether a burdensome subpoena is reasonable 'must be determined according to the facts of the case,' such as the party's need for the documents and the nature and importance of the litigation." *Wiwa*, 392 F.3d at 818 (quoting *Linder v. Dep't of Def.*, 133 F.3d 17, 24 (D.C. Cir. 1998)).

In determining if a subpoena imposes an undue burden, courts look to six factors: "(1) [the] relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa*, 392 F.3d at 818; *see also United States ex rel. Willis v. SouthernCare, Inc.,* 2015 WL 5604367, *9 (S.D. Ga. Sept. 23, 2015); *In re Domestic Drywall Antitrust Litigation,* 300 F.R.D. 234, 252 (E.D. Pa. 2014).  In cases where document requests are made to nonparties, the court will also consider the resultant

"expense and inconvenience to the nonparty." *TIC Park Centre,* 2017 WL 9988745, at *2 (quoting *Wiwa,* 392 F.3d at 818). "As part of this inquiry, '[a] trial court has broad . . . discretion in evaluating the circumstances of a case when considering . . . oppressiveness [of a subpoena]; [accordingly], [i]t must carefully examine the circumstances presented to it and, when appropriate, consider the possibility of modifying the subpoena rather than quashing.'" *TIC Park Centre,* 2017 WL 9988745, at *2 (quoting *Northrop Corp. v. McDonnell Douglas Corp.,* 751 F.2d 395, 403 (D.C. Cir. 1984)).

"In assessing these considerations, special weight should be given to the burden on non-parties of producing documents to parties involved in the litigation." *Cohen v. City of New York,* 255 F.R.D. 110, 117 (S.D.N.Y. 2008) (internal quotation omitted); *see also Amini Innovation Corp. v. McFerran Home Furnishings, Inc.,* 300 F.R.D. 406, 409 (C.D. Cal. 2014) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in a Rule 45 inquiry") (internal quotation omitted); *Dart Industries Co., Inc. v. Westwood Chemical Co.,* 649 F.2d 646, 649 (9th Cir. 1980) ("[w]hile discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be broader when a non-party is the target of discovery"). A "Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on [a] nonparty." *Fears v. Wilhelmina Model Agency, Inc.,* 2004 WL 719185, *1 (S.D.N.Y. April 1, 2004). While, "discovery should not simply be denied on the ground that the person or entity from whom it is sought is not a party to the action.... [the optimal] approach is for the court to take steps to relieve a nonparty of the burden of compliance even when such accommodations might not be provided to a party." *Wertheim Schroder & Co. v. Avon Products, Inc.,* 1995 WL 6259, *6 (S.D.N.Y. Jan. 9, 1995).

In this regard, "[a] court may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation." *Rocky Mountain Medical Management,* 2013 WL 6446704, *4 (D. Idaho Dec. 5, 2013); *see also Brown v. City of Syracuse,* 648 F. Supp.2d 461, 466 (N.D.N.Y. 2009) (finding that, in balancing hardships between requesting party and nonparty, a court should look to whether there are other sources for obtaining the sought material); *Arthrex, Inc. v. Parcus Medical, LLC,* 2011 WL 6415540, *6 (S.D. Ind. Dec. 21, 2011) ("[a] party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same requests.").

## II.    The Motion to Compel and Underlying Subpoena Are Procedurally Defective and Invalid

"Both Rule 37 and Rule 45 require that when a party seeks to compel a non-party's action pursuant to a subpoena *duces tecum*, the party must file its motion to compel in the district where the sought documents are located, not in the district where the subpoena was issued." *Koenig,* 2020 WL 635772, at *2. "A subpoena that requires a non-party's compliance outside of Rule 45's geographical scope is invalid." *Koenig,* 2020 WL 635772, *1 (citing *Miller v. Holzmann,* 471 F. Supp.2d 119, 121 (D.D.C. 2007)). Moreover, the geographic limitation in Rule 45 "unequivocally applies . . . to being required to produce documents at a distance of more than 100 miles from one's home . . .[i]t draws no distinction whatsoever between being compelled to testify and being compelled to produce documents at a certain place." *Miller,* 471 F. Supp.2d at 121; *see also Selee Corporation v. McDanel Advanced Ceramic Technologies, LLC,* 2016 WL 4546446, at *4 (W.D.N.C. Aug. 31, 2016) (subpoena ordering "production of documents at location greater than 100 miles from [nonparty's] office" was unenforceable); *U.S. Equal Opportunity Commission v. Bojangles' Rest.,* 2017 WL 2889493, *5 (E.D.N.C. July 6, 2017) (subpoena "exceeds the permissible 100 mile geographical limit imposed by Rule 45 by a distance of approximately 30

miles . . . [t]his flaw requires quashing or modifying subpoena"); *Nieman v. LinkedIn Corp.,* 2013 WL 685203, *2 (N.D. Cal. Feb. 25, 2013) ("nonparties cannot be required to produce documents at a location more than 100 miles from their home or business").

As set forth above, TMTG maintains its primary office location at 401 N. Cattlemen Road, Suite 200, in Sarasota, Florida.  This information is, moreover, a matter of public record, and remains available upon simple consultation of the State of Florida's Division of Corporations website.  (*See* Doc. 12-1; Doc. 12-2; Doc. 12-3).  Notwithstanding this publicly available information, Petitioners designated its offices at 2101 Vista Parkway, Suite 4006, West Palm Beach, Florida, as the place of compliance on the subpoena.  (Doc. 1-3).  Notably, the Sarasota address wherein TMTG is actually headquartered, transacts business, and coordinates day-to-day operations, and where the requested non-public business records and documents would be located, is over 144 miles from the designated place of compliance in West Palm Beach, Florida.  (Doc. 12-1).  As set forth above, to be valid, enforceable, or compliant pursuant to the Federal Rules, a subpoena may "*only*" be issued "within 100 miles of where the [subpoenaed nonparty] resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(1)(A) (emphasis added); *see also Koenig,* 2020 WL 635772, at *1; *Miller,* 471 F. Supp.2d at 121; *Selee,* 2016 WL 4546446, at *4; *Nieman*, 2013 WL 685203, *2.  As such, Petitioners' subpoena is facially invalid, in the first instance, as it commands production by nonparty TMTG well in excess of 100 miles from its headquarters and the location of the documents sought by way of the subpoena.

Furthermore, while the designated place of compliance in West Palm Beach is within the boundaries of this District Court, the discovery which is subject of this motion is in Sarasota, and is thereby within the District Court for the Middle District of Florida. Therefore, assuming, *arguendo*, that Petitioners contend that their subpoena is valid as issued and argue that it requires

TMTG's compliance and production, then Petitioners' motion to compel compliance should have been brought in the Middle District of Florida pursuant to the Federal Rules, since TMTG's primary and registered Florida office location is in Sarasota (within the Middle District of Florida). *See* Fed. R. Civ. P. 37(a) ("[a] motion for an order to a nonparty *must* be made *in the court where the discovery is* or will be taken") (emphasis added); *Koenig,* 2020 WL 635772, at *2 ("[i]n other words, a party wishing to compel a discovery response from a non-party must file its motion to compel in the district where the discovery materials are located"). Petitioners have ostensibly acknowledged this reality, as they have since re-issued the exact subpoena at issue herein, but with a designated place of compliance in the Middle District of Florida. Although this second subpoena was issued on August 1, 2022, Petitioners have not withdrawn their first subpoena or this motion.

In *Europlay,* 323 F.R.D. at 629, the District Court for the Central District of California evaluated a motion to compel production from a nonparty (Google) and concluded that, *inter alia,* the motion should have, instead, been brought in the Northern District of California because "the Northern District of California . . . is within 100 miles of where (1) Google is headquartered, [and] (2) Google's custodians of records reside, are employed, and regularly transact business in person." *Id* (citing *Music Group Macao Commercial Offshore Ltd. v. Does,* 82 F. Supp.3d 979, 984 (N.D. Cal. 2015), for the proposition that "there is 'no question' that the proper district to hear a motion to compel compliance with a Rule 45 nonparty subpoena is where the nonparty is headquartered").

Similarly, here, the discovery materials sought by Petitioners are most likely located at TMTG's office, which is also where a plurality of its executives and leadership team maintain their offices; therefore, a motion to compel production of such materials needs to be made in the judicial venue wherein such materials reside, which is the Middle District of Florida, in this case. Whereas, when a motion to compel is brought against a nonparty in a venue other than where the nonparty

is headquartered (and, in turn, where the requested records would be) the "Court has no jurisdiction over [the] motion to compel". *Europlay,* 323 F.R.D. at 629.

The facts and circumstances that the District of South Carolina confronted in *Koenig* is further illustrative in this regard.  2020 WL 635772, at *2.  There, the motion to compel a response to the subpoena was brought in the District Court where the subpoena required compliance (Columbia, SC), however it was more than 100 miles away from the nonparty respondent's headquarters in Pittsburgh, PA. *Id.*  The Court observed that:

> [Petitioner] is caught between a procedural Scylla and Charybdis. If he argues that he brought this motion to compel in the correct district because his subpoena requires compliance in Columbia, South Carolina, then his subpoena fails because it requires [respondent]'s compliance more than 100 miles away from where [respondent] is located. If, however, he argues that the subpoena requires compliance in Pittsburgh, then he has brought his motion to compel in the wrong district, as the Federal Rules would require that the Western District of Pennsylvania hear the dispute. ***Either way, the court must deny the motion***. Because of the subpoena's fatal procedural shortcomings, the court need not reach its substantive merit.

*Id.* (emphasis added).

Finally, in the event the Court determines that it can reach the merits of Petitioners' application, pursuant to Local Rule 26.1(g)(1), the instant motion to compel is facially untimely. Specifically, Local Rule 26.1(g)(1) provides that "[a]ll disputes related to discovery shall be presented to the Court by motion . . . within (30) days from the: (a) original due date (or later date if extended by the Court or the parties) of the response or objection to the discovery request that is the subject of the dispute . . .  or (c) date on which a party first learned of or should have learned of a purported deficiency concerning the production of discovery materials."  L.R. § 26.1(g)(1). Here, TMTG served its responses to the Subpoena on May 27, 2022.  (Doc. 1, p. 5).  Thereafter, on June 2, 2022, the parties conferred regarding Petitioners' stated issues with TMTG's responses and objections, which are the subject of this motion.  (Doc. 1, p. 5).  However, the instant motion

9

to compel compliance with Petitioners' subpoena was not filed by Petitioners until 50 days, thereafter. As such, Petitioners' motion to compel compliance is untimely pursuant to Local Rule 26.1(g)(1), and should, therefore, be denied. *See 4Demand, LLC v. G4S Secure Solutions, Inc.,* 2020 WL 3266102, *2 (S.D. Fla. June 17, 2020) ("[i]t is therefore apparent that Petitioners' motion to compel fails as it is untimely under Local Rule 26.1(g)(1); *see also Ramones v. AR Resources, Inc.,* 2020 WL 10728841, *2 (S.D. Fla. Oct. 22, 2020); *Sprint Communications, Inc. v. Calabrese,* 2019 WL 9598506, *2 (S.D. Fla. Aug. 20, 2019).

In light of these various procedural defects, Petitioners' motion to compel must be denied.

### III.   Requests Nos. 2, 3, 4, 5, 6, and 7 in Petitioners' subpoena directed to TMTG seek documents beyond the permissible scope of discovery, are unduly burdensome on TMTG, and are not tailored or proportional to the allegations in this case.

To the extent the Court reaches the merits of Petitioners' motion to compel, there are six specific document demands contained within Petitioners' subpoena which form the basis of this dispute; each of these demands transcends the permissible bounds of discovery and are therefore objectionable. Pursuant to Local Rule 26(g)(2), these demands, together with TMTG's responses and objections thereto, are enumerated and addressed *seriatim,* below.

**REQUEST NO. 2.**   All documents relating to the solicitation and recruitment of candidates for the position of Chief Executive Officer of TMTG, including but not limited to communications with or about candidates or potential candidates, job descriptions, job posting, job listings, and job application forms.

**Response**:   TMTG objects to this Request as unduly burdensome and overly broad as to timeframe. Specifically, this Request seeks information from the beginning of time to the present. In addition, TMTG objects to this Request as irrelevant and not proportional to the needs of the case. Specifically, the information requested has no bearing on any of the claims or defenses in the subject litigation.

This request is "classically overbroad," as nothing about this request purports to limit itself to documents relevant to Nunes's claims or personal situation, relative to his employment with TMTG or this lawsuit. *See Willis,* 2015 WL 5604367, at *9. A far cry from "narrowly tailored" to the issues of this case, Petitioners' request seeks "all documents" pertaining to the solicitation

and recruitment of any candidate for the position of Chief Executive Officer for TMTG. *See Pretka v. Kolter City Plaza II, Inc.,* 2012 WL 12931422, *2 (S.D. Fla. June 6, 2022) ("the requests themselves are not . . . narrowly tailored. . . [i]ndeed, Plaintiffs seek 'all communications between subcontractors and . . . Defendant,' and 'all records from the project architect,' as well as all finance/bookkeeping records and loan documents in [nonparty respondent]'s possession").

Petitioners' request for "all documents relating to the solicitation of candidates for the position of Chief Executive Officer," by its very terms, is unlimited in scope and extends well beyond Nunes's experience with being recruited, solicited, and/or interviewed for the Chief Executive Officer position. In fact, it goes so far as to seek all "communications (apparently internal or external) with or about candidates or potential candidates," and therefore necessarily includes and implicates individuals who were never interviewed for the position, never offered the position, and even those who may have ever known that they were even under consideration for the Chief Executive Officer position. In sum, the universe of potentially responsive documents is inherently undefined in time or in scope, and encompasses innumerable "candidates and potential candidates," irrespective of how briefly, seriously, or legitimately such candidates were ever considered for the position with TMTG. Furthermore, no candidate for the Chief Executive Officer position is or ever was relevant to this case, aside from Nunes himself. In this regard, "[Petitioner]s' demands are like a bulldozer that levels an entire hill in the hopes of finding some specks of gold." *Alig-Mielcarek v. Jackson*, 286 F.R.D. 521, 527 (N.D. Ga. 2012).

As justification for this limitless request, Petitioners claim, *inter alia*, that such documents "will show the qualities TMTG sought in its CEO, and why Nunes was a fit for this important role, notwithstanding [his allegations of reputational harm]." (Doc. 1). However, "the qualities TMTG sought in its CEO" have absolutely no bearing on this case. *See Allen v. Howmedica Leibinger,*

11

*GmbH,* 190 F.R.D. 518, 521-22 (W.D. Tenn. 1999) (citing Fed. R. Civ. P. 26(b)(1)) (explaining that the relevance burden is only met where "the party can show that the information sought appears reasonably calculated to lead to the discovery of admissible evidence"); *see also Hickman v. Taylor,* 329 U.S. 495, 497 (1947) ("[n]evertheless, the right to discovery is not unlimited, and does have "ultimate and necessary boundaries"); *Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F.2d 1318, 1326 (Fed. Cir. 1990) (discovery may be denied "where, in the court's judgment, the inquiry lies in a speculative area"). Intuitively, Nunes possesses and embodies any such "qualities" that TMTG might seek in its CEO, as he was ultimately hired for the position. As such, whether or not other candidates possessed such traits or qualities, or how the candidates compared relative to one another, has absolutely no bearing on, nor illustrative value to, the underlying defamation claim. Moreover, regardless of the extent of the defamation and reputational harm that may have been incurred by Nunes, whether or not an individual suffers a reputational injury does not affect or alter the objective qualities or traits that person independently possesses or may possess.

In a further audacious defense of the blatant overreach of this request, Petitioners go on to assert that because TMTG (as Nunes's employer) has not somehow stifled Nunes's defense of his character or personal rights, or otherwise ordered a withdrawal of Nunes's defamation suit – brought in his personal capacity before TMTG existed and entirely separate and independent from his duties with TMTG – that this justifies discovery *carte blanche* for Petitioners. (Doc. 1) ("yet, TMTG is perfectly fine with Nunes's desire to prosecute this defamation suit, which will result in two weeks away from his duties as CEO attending a trial . . . [r]egardless, if TMTG . . . [is] willing to bear the burdens associated with allowing [its] CEO to be a defamation plaintiff, then among those burdens is an obligation to respond to this . . .Subpoena"). However, the fact that defamation plaintiff Nunes is employed by TMTG does not abrogate the rights of nonparty TMTG, nor does

it expand the permissible scope of discovery pursuant to Fed. R. Civ. P. 26(b)(1) so as to encompass documents that have no bearing whatsoever on the subject case.

Accordingly, Request Number 2 is overly broad and seeks information that is not relevant to the claims at issue, and is, therefore, wholly objectionable.

> **REQUEST NO. 3.**    All documents relating to TMTG's solicitation, recruitment, and consideration of [Nunes] for employment with TMTG, including but not limited to communications (both internal to TMTG and with third parties) regarding [Nunes]'s candidacy and qualifications for the position of Chief Executive Officer.
>
> **Response**:    TMTG objects to this Request as unduly burdensome and overly broad as to timeframe. Specifically, this Request seeks information from the beginning of time to the present. In addition, TMTG objects to this Request as irrelevant and not proportional to the needs of the case. Specifically, the information requested has no bearing on any of the claims or defenses in the subject litigation.

This request seeks disclosure of "confidential . . . commercial information" in the form of "internal" communications of an inherently personal and sensitive nature, regarding the hiring and recruitment of candidates for the Chief Executive Officer position with TMTG. *See* Fed. R. Civ. P. 45(d)(3)(B)(i). Petitioners have also failed to establish "a substantial need for the . . . [requested] material," which cannot be provided without undue hardship in the absence of the Court modifying the scope of the subpoena. *See* Fed. R. Civ. P. §§ 45(d)(3)(C), 45(d)(3)(C)(i). In this regard, Petitioners state that "[t]hese documents will show that TMTG, undeterred by the allegedly defamatory tweet, thought highly of Nunes and wanted to hire him." (Doc. 1, p. 10). However, any purported utility of the documents sought pertaining to the solicitation and/or hiring of Nunes, for the purpose of demonstrating that TMTG thought highly enough of him to hire him, is obviated by the fact that TMTG did ultimately hire Nunes as its Chief Executive Officer. Put differently, Petitioners do not have any need for information demonstrating that TMTG "wanted to hire [Nunes]" since they already know that TMTG did hire Nunes. Therefore, there is no probative value of the information sought by way of this request, in the first instance, much less value that

that could justify the time and expense incurred by a nonparty in having to review and evaluate documents for potential responsiveness and, in turn, compile and produce any such documents.

Furthermore, as with Request Number 2, above, Petitioners seek "all documents" – this time pertaining to "TMTG's solicitation, recruitment, and consideration of [Nunes] for employment – without any further limitation or tailoring to the issues of the case, whatsoever.  As such, this request is overbroad, both in terms of time and scope.  *See Pretka,* 2012 WL 12931422, at *2; *Willis,* 2015 WL 5604367, at *9 (finding that request which sought "any copies of . . . documents" was "overbroad . . . [as] it contains no tie-ins to [Plaintiff]'s claims").

Accordingly, Request Number 3 is overly broad and seeks information that is not relevant to the claims at issue, and is, therefore, wholly objectionable.

> **REQUEST NO. 4.**   All documents relating to the hiring and onboarding of [Nunes] as an employee of TMTG, including but not limited to offer letters to [Nunes] and [Nunes]'s acceptance thereof.
>
> **Response**:     TMTG objects to this Request as both overly broad and vague. Specifically, TMTG does not know what Defendants mean by "relating to the hiring and onboarding of [Nunes] as an employee of TMTG."

As with the preceding requests, this request also seeks an unlimited disclosure of an exceedingly broad category of documents.  Specifically, by seeking "all documents relating to the hiring and onboarding of [Nunes]" of TMTG's Chief Executive Officer, Petitioners ostensibly seek every document in TMTG's possession, since Nunes's hiring.  It is difficult to imagine a document not either directly, indirectly, or tangentially "relating to" or in some way reflecting the presence of the subpoenaed company's highest ranking corporate officer. *See Willis,* 2015 WL 5604367, at *9 ("[Request] Number 3, which asks for all [inter-company] correspondence . . . captures not only [potentially responsive] . . . communications, but also potentially emails about who's bringing doughnuts to a particular meeting, not to mention myriad other pointless topics that will never lead to admissible evidence").  In this regard, one wonders if Petitioners also seek

documents evidencing any potential welcome luncheons held in the wake of "hiring and onboarding" TMTG's new Chief Executive Officer, or any number of other arguably responsive, but patently irrelevant, topics given that Petitioners made no attempt to limit this request – either in terms of time or scope – in any way.  By definition, this request is "classically overbroad".  *See Pretka,* 2012 WL 12931422, at *2; *Willis,* 2015 WL 5604367, at *9.

In this manner, and largely for the reasons referenced above, the request is also inherently vague through its reliance on the phrase "relating to".  *See Willis,* 2015 WL 5604367, at *9 ("[Petitioner] has shown no need for 'all documents reflecting ... any review ... of [Respondent],' . . . and, even if he had, request no. 2 suffers from vagueness (wiggle words like 'reflect' and 'relate' often impart that quality on discovery requests) that independently justifies quashing"); *see also Fernanders v. Mich. Dep't of Military and Veterans Affairs*, 2013 WL 1945985, * 1 (E.D. Mich. May 9, 2013) (finding a request impermissibly vague which sought production of "all documents regarding, reflecting, concerning, pertaining to, or evidencing any action... by Defendant with respect to an employee being suspended").

Accordingly, Request Number 4 is overly broad, vague, and potentially (and ostensibly) seeks information that is not relevant to the claims at issue, and is, therefore, wholly objectionable.

**REQUEST NO. 5.**   All agreements between [Nunes], on the one hand, and TMTG and/or DWAC, on the other hand, including but not limited to any offer letters or counteroffers, engagement agreements, employment contracts, and/or any contracts relating to compensation or indemnification of any kind.

**Response**:     TMTG objects to this Request to the extent it seeks information from a third party – Digital World Acquisition Corp. In addition, TMTG objects to this Request as it seeks confidential and proprietary information. TMTG also objects to this Request as irrelevant and not proportional to the needs of the case. Specifically, the information requested has no bearing on any of the claims or defenses in the subject litigation. Finally, TMTG objects on the basis that any document to which Devin Nunes is a signatory can be requested from Mr. Nunes, who is a party to this litigation.

As an initial matter, the documents sought by way of this request would naturally be in Plaintiff Nunes's own possession, and more readily available from him, assuming such documents are applicable and otherwise subject to disclosure. "'Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party' and, accordingly, 'may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation.'" *In re Wood,* 2019 WL 5789848, at *4 (D. Maine Nov. 6, 2019) (quoting *Amini,* 300 F.R.D. at 410); *see also Precourt v. Fairbank Reconstruction Corp.,* 280 F.R.D. 462, 467 (D.S.D. 2011) ("If the party seeking information can easily obtain the same information without burdening the non-party, the court will quash the subpoena."); *Torres v. Johnson & Johnson,* 2021 WL 2209870, *2 (D. Mass. June 1, 2021) ("Defendants are the appropriate source of such information [as opposed to a nonparty]; as this court has previously explained, Fed. R. Civ. P. 34 is the means for obtaining documents disclosing [the sought] information"). Moreover, by its very terms, this request seeks documents made by and between Plaintiff "Nunes and . . . [nonparty] DWAC," which, obviously, would not be within TMTG's domain. The fact that Petitioners are seeking records from nonparty TMTG relating to "agreements" between two *other* parties (Nunes and DWAC) further suggests that this demand is not tailored to the issues of the case or, at the very least, not directed to the proper party.

Notwithstanding the foregoing, Petitioners have also failed to demonstrate how the documents sought through this request would have any bearing on the subject litigation and, thereby, be within the permissible scope of discovery pursuant to Fed. R. Civ. P. 26(b)(1). This request seeks discovery related to Nunes's income and compensation; however, as set forth in Nunes's opposition filing on August 3, 2022, he is not seeking damages based upon loss of income or compensation. (Doc. 17, p. 7). As a result, this requested discovery has no bearing on the claims

in the underlying defamation lawsuit.  Beyond this, given that Petitioners are already well aware of Nunes's employment with TMTG, and the capacity thereof, it is entirely unclear what further relevant information could be derived from the "offer letters or counteroffers, engagement agreements, employment contracts, and/or any contracts relating to compensation . . ." that Petitioners seek, in the context of defending a lawsuit sounding in defamation (and, notably, not in Nunes's employment relationship with TMTG nor events deriving therefrom or associated therewith).  Here, Petitioners again seek to bulldoze an entire hill in their speculative quest for the proverbial flecks of gold. *See Alig-Mielcarek v. Jackson*, 286 F.R.D. at 527.

Finally, although Petitioners admit to already being in receipt of Nunes's employment agreement, they are evidently dissatisfied with the contents of the document, and now seek a duplicate copy. (Doc. 1, p. 12) ("upon reviewing this document, Petitioners' counsel have questions about its accuracy and completeness").  In this regard, Petitioners argue that "it is not a burden for TMTG to produce a single, readily available document."  However, Request Number 5 purports to seek a wide swath of documents beyond Nunes's employment agreement or, in any event, "a single document".  Petitioners, moreover, corroborate this with their assertion that "[r]egardless, Request No. 5 calls for more than Nunes's employment agreement." (Doc. 1, p. 12). It is, therefore, entirely unclear as to what Petitioners actually seek here, given that it is difficult to harmonize their own statements with respect to this request.  Moreover, it remains altogether unclear what the import of any of these employment-related documents would be, given that Petitioners are already quite familiar with Nunes's employment with TMTG, by their own admissions.  (*See* Doc. 1, pp. 8, 10 ("Nunes is TMTG's highest-ranking employee, with substantial responsibilities . . . as CEO" and "TMTG valued Nunes so highly that it was willing to pay him, and agreed to pay him, handsomely").  Given these assertions, it is mystifying as to what further

information Petitioners could possibly believe that they stand to gain – that would actually be relevant to and/or have bearing on the subject lawsuit – through the expansive, voluminous, and burdensome demands it has levied on the nonparty respondents herein.

Accordingly, Request Number 5 is overly broad, vague, seeks documents that are not relevant to the claims at issue, and is unduly burdensome upon nonparty TMTG insofar as it seeks documents more readily available from a party to the lawsuit (i.e. the plaintiff); therefore, this request is wholly objectionable.

> **REQUEST NO. 6.**   All documents relating to remuneration for [Nunes], including but not limited to negotiations regarding compensation or the process for setting compensation.
>
> **Response**:     At the outset, Devin Nunes' compensation as CEO of TMTG is publicly available information. To the extent Defendants non-public information related to Mr. Nunes' compensation, TMTG objects to this Request as it seeks confidential and proprietary information. TMTG further objects to this Request as irrelevant and not proportional to the needs of the case. Specifically, the information requested has no bearing on any of the claims or defenses in the subject litigation. Finally, TMTG objects on the basis that any document to which Devin Nunes is a signatory can be requested from Mr. Nunes, who is a party to this litigation.

As with the preceding request, all of the documents sought by way of this request would naturally be in Plaintiff Nunes's own possession, and more readily available from him, assuming such documents are applicable and otherwise subject to disclosure. "'Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party' and, accordingly, 'may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation.'" *In re Wood,* 2019 WL 5789848, at *4 (quoting *Amini,* 300 F.R.D. at 410); *see also Precourt,* 280 F.R.D. at 467 ("If the party seeking information can easily obtain the same information without burdening the non-party, the court will quash the subpoena."); *Torres,* 2021 WL 2209870, at *2 ("Defendants are the appropriate source of such information [as opposed to nonparty]; as this court has previously explained, Fed. R. Civ. P. 34 is the means for obtaining documents disclosing [the sought] information").

Moreover, as TMTG pointed out in its response to this request, Nunes's compensation as CEO of TMTG is publicly available information. Petitioners do not refute this point and, in fact, already seem to be familiar with Mr. Nunes's compensation. (Doc. 1, p. 10, "TMTG valued Nunes so highly that it was willing to pay him, and agreed to pay him, handsomely"). Insofar as Petitioners now stipulate that they seek more "than what is referenced in [publicly available] SEC filings" regarding Nunes's compensation, such information would exceed the permissible scope of discovery. Fed. R. Civ. P. 26(b)(1). Specifically, Petitioners seek, by way of example, "documents relating to the negotiation of Nunes's compensation. . . [to] demonstrate that nobody involved in negotiating Nunes's generous compensation package 'discounted' Nunes's compensation as a result [of the alleged defamatory remarks]." (Doc. 1, p. 13). Assuming, *arguendo*, Mr. Nunes's compensation was ever the source of any such "negotiations" in the first instance, this information would not have any bearing on the lawsuit nor would it shed meaningful light on the "discounting" issue raised by Petitioners, regardless. As set forth above, Nunes is not seeking damages based upon loss of income or compensation. (Doc. 17, p. 7). Furthermore, the absence of any express, written indicia of "discounting" in a hiring process that occurred well after the statements at issue in the underlying litigation would not mean that Mr. Nunes has not been otherwise "discounted" or suffered reputational harm elsewhere or in other contexts. Nor would it even necessarily indicate that "discounting" did not happen subconsciously or implicitly in the context of his hiring by TMTG. *See, e.g., Cohen,* 255 F.R.D. at 121 ("[h]owever, the fact that the City did not always violate the rights of protesters is not probative of whether it ever did."). As such, the documentary information Petitioners claim to seek by way of this document request does not – and, in fact, logically cannot – establish the propositions for which Petitioners seek it.

Accordingly, Request Number 6, is overly broad, is unduly burdensome upon nonparty TMTG insofar as it seeks documents more readily and likely in the possession of a party to the lawsuit (i.e. the plaintiff), and seeks documents that are not relevant to the claims at issue nor designed to elicit relevant information; therefore, this request is wholly objectionable.

**REQUEST NO. 7.**    All communications with DWAC regarding [Nunes], including but not limited to communications concerning [Nunes]'s candidacy and qualifications for the position of Chief Executive Officer.

**Response**:    TMTG objects to this Request as unduly burdensome and overly broad as to timeframe and subject matter. Specifically, this Request seeks information from the beginning of time to the present – and is unlimited as to scope. Finally, TMTG objects to this Request as irrelevant and not proportional to the needs of the case. Specifically, the information requested has no bearing on any of the claims or defenses in the subject litigation.

Request Number 7 is entirely duplicative of Request Number 3, which seeks, *inter alia*: "[a]ll documents relating to TMTG's solicitation, recruitment, and consideration of [Nunes] for employment with TMTG, including . . . communications . . . with third-parties . . . regarding [Nunes]'s candidacy and qualifications for the position of Chief Executive Officer." For the reasons set forth in connection with Request No. 3, this request is likewise overly broad and seeks information that is not relevant to the claims at issue, and is, accordingly, wholly objectionable.

<u>Conclusion</u>

For the reasons set forth above, Petitioners' motion should be denied. Petitioners have not adhered to the rules governing subpoena issuance and enforceability, and the subpoena and motion to compel are both procedurally defective.  This motion is, moreover, untimely pursuant to the Local Rules of this Court. Finally, to the extent the Court reaches the merits of Petitioners' motion to compel, the subject requests exceed the permissible bounds of discovery and are therefore objectionable. Accordingly, the Court should deny Petitioners' motion to compel compliance with the subpoena, together with such other and further relief this Court deems just and proper.

Dated:  August 4, 2022

LIPPES MATHIAS LLP

/s/ Alessandro A. Apolito
Alessandro A. Apolito, Esq.
10151 Deerwood Park Blvd.
Jacksonville, Florida 32256
P: 904-660-0020
F: 904-660-0029
E:  aapolito@lippes.com

Scott S. Allen, Esq., *pro hac vice*
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
P: 716-853-5100
F: 716-853-5199
E: sallen@lippes.com