UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 22-mc-81070-MIDDLEBROOKS/MATTHEWMAN

RYAN LIZZA, et al.,

    Petitioners,

vs.

TRUMP MEDIA & TECHNOLOGY
GROUP CORP.,

    Respondent.

_____/

FILED BY ____KJZ____ D.C.

Aug 15, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

**ORDER GRANTING IN PART AND DENYING IN PART PETITIONERS' MOTION TO COMPEL RESPONDENT'S COMPLIANCE WITH SUBPOENA [DE 1]**

**THIS CAUSE** is before the Court upon Petitioners, Ryan Lizza and Hearst Magazine Media, Inc's ("Petitioners") Motion to Compel Respondent Trump Media & Technology Group Corporation's ("Respondent" or "TMTG") Compliance with Subpoena ("Motion") [DE 1]. This matter was referred to the Undersigned by the Honorable Donald M. Middlebrooks, United States District Judge. [DE 11]. Devin Nunes has filed a response [DE 17], Respondent TMTG has filed a response [DE 20], and Petitioners have filed a reply [DE 23]. The Court held a hearing on the Motion via Zoom VTC on August 12, 2022. The Court made its oral rulings at that time, and this written order follows.

    **I.**    **Background**

This case stems from an action pending in the Northern District of Iowa (*Devin G. Nunes v. Ryan Lizza et al.*, No. 5:19-cv-04064-CJW-MAR). In the underlying action, Devin Nunes, a

1

former California Congressman, sued Petitioners for defamation (reputational harm). Nunes asserts that Lizza's 2019 tweet, which linked a 2018 Esquire article Lizza wrote about Nunes, and the article itself, caused him $75 million in reputational harm. However, Petitioners point out that Nunes was later hired by TMTG to be its CEO. Petitioners served a subpoena *duces tecum* on TMTG on April 8, 2022, and it objected to Request Nos. 2, 3, 4, 5, 6, and 7. The subpoena seeks documents related to the recruitment and hiring of Nunes.

## II. Motion, Responses, and Reply

In their Motion, Petitioners contend there is no dispute that the subpoena was duly served on TMTG's registered agent for service of process or that it is procedurally proper as it listed a location of production that is within 100 miles of where TMTG resides or regularly transacts business. [DE 1 at 5–6]. Petitioners point out that TMTG did not object to the subpoena on the ground that it did not, or no longer, resides and/or regularly transacts business in this district. *Id.* at 6.

Next, Petitioners generally argue that the requests at issue are relevant and proportional as they pertain to Nunes' recruitment and hiring for the CEO position and thus are relevant to Nunes' claim of damage and injury to his personal and professional reputations. [DE 1 at 7–13]. Petitioners also contend that that Nunes is seeking damages in the amount of $75 million and assert that "[i]n a case of this magnitude, the discrete categories of documents sought by this Subpoena are proportional." *Id.* at 7–8. They argue that TMTG has not established that the requests are overly burdensome. *Id.* at 8. Petitioners point out the close relationship between Nunes himself and TMTG. *Id.* They emphasize that there is a protective order entered in the underlying action, so confidentiality should not be an issue. *Id.* at 11. Finally, they assert that Nunes has only produced

one document that would be responsive to the subpoena requests and claims to have no other documents; therefore, this is not a situation where Petitioners can obtain the documents directly from Nunes. *Id.* at 11–12.

In response, Nunes argues that the subpoena is "grossly overbroad," not proportional to the needs of the case, and intended to harass him. [DE 17 at 2]. He explains that he filed a Second Amended Complaint which does not claim loss of income as an element of damages. *Id.* at 7. According to Nunes, the subpoena seeks documents unrelated to him. *Id.* at 8. He also argues that the "only real possible relevance of the Subpoena is to prove or disprove that Plaintiff suffered damages. In this regard, the Subpoena constitutes overkill." *Id.* Nunes contends that the subpoena clearly violates the proportionality requirement. *Id.* He argues that his income while he was a Congressman is a matter of public record, as are the specific terms of his current employment. *Id.* at 9. He also points out that he has already produced a copy of his employment agreement and tax returns. *Id.* According to Nunes, the subpoena additionally invades the attorney-client privilege. *Id.*

In its response, TMTG claims it is a Delaware corporation with a principal place of business in Sarasota, Florida, and a registered agent in North Palm Beach, Florida. [DE 20 at 1]. TMTG argues that the motion to compel is procedurally defective for having not been brought in the District Court in the district wherein the sought documents are located and where TMTG is headquartered (MDFL) pursuant to Rule 45(d)(2)(B)(i). *Id.* at 6–7. TMTG also claims that the subpoena is defective because it lists the place of compliance as West Palm Beach, which is more than 100 miles from Sarasota, in violation of Rule 45(c)(2)(A). *Id.* at 7–9. According to TMTG, Petitioners have since re-issued the exact subpoena at issue here, with a designated place of

3

compliance in the MDFL; however, they have not withdrawn their first subpoena or this Motion. *Id.* at 8. Finally, TMTG argues that the Motion is untimely as it was filed more than 30 days after receipt of TMTG's responses and objections to the subpoena. *Id.* at 9–10.

TMTG makes the substantive arguments that the requests are improper, unduly burdensome, consistently overbroad in time and scope, factually not relevant, and vague, and also that they seek documents more reasonably and readily available from a party to this lawsuit. [DE 17 at 10–20].

In reply, Petitioners argue that TMTG waived its objection to the place of compliance by failing to raise the objection in its responses to the subpoena and that the objection is meritless because TMTG's principal place of business was in Palm Beach at the time the subpoena was served and TMTG still regularly transacts business in Palm Beach. [DE 23 at 1–4]. Petitioners additionally argue that the information sought is relevant and proportional (as previously held by an Iowa federal court) and that Nunes claims to have no other responsive documents. *Id.* at 5–7. They contend that the Motion was timely because there was a June 23, 2022 email exchange in an effort to confer. *Id.* at 4–5. Finally, Petitioners point out that TMTG has not introduced any evidence of undue burden and that the protective order in the underlying action eliminates any confidentiality concerns. *Id.* at 9–10.

### III. Analysis

TMTG and Devin Nunes make several technical and substantive arguments in their responses. The Court will discuss each in turn below.

### A. Whether the Subpoena Was Properly Served and Whether This Court Has Jurisdiction to Hear the Motion

Federal Rule of Civil Procedure 45(c)(2)(A) states that a subpoena may command production of documents "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). Federal Rule of Civil Procedure 45(d)(2)(B)(i) provides that "[a]t any time, on notice to the commanded person, the [subpoena] serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). Motions to compel responses in connection with a Rule 45 subpoena are governed by Fed. R. Civ. P. 37(a), which provides that "[a] motion for an order to a nonparty must be made in the court where the discovery is or will be taken." Fed R. Civ. P. 37(a).

TMTG argues that, since its principal offices are located in Sarasota, Florida, and the documents requested are located there, the subpoena is improper in requiring documents to be produced to an address in West Palm Beach, Florida (which is more than 100 miles from Sarasota) and also that Petitioners' Motion should have been filed in the Middle District of Florida. The Court rejects these arguments.

First, the subpoena was served on April 8, 2022 [DE 1-3, Ex. H], and, at that time, TMTG's principal place of business was listed with the Corporations Division of the Secretary of State in Georgia as being in Palm Beach, Florida. [DE 1-3, Ex. G]. Second, on April 18, 2022, TMTG filed documents with the Florida Secretary of State which listed the principal place of business at a Sarasota address. [DE 12-3, Ex. B]. Third, TMTG filed its response to the subpoena on May 27, 2022, and made no objection regarding the place of production. [DE 1-3, Ex. J].

5

The Court finds that the subpoena was properly served and that TMTG's principal place of business at the time of service is the relevant inquiry. Here, the principal place of business at the time of service was Palm Beach, Florida. The Court also finds that Petitioners have established that TMTG continues to transact business from Palm Beach in its reply, affidavit, and the various attachments. Additionally, TMTG did waive any argument about the propriety of the subpoena by failing to raise such objection in its initial response to the subpoena. *See Wah Hong Go v. Winn-Dixie Stores, Inc.*, No. 06-20302-CIV, 2007 WL 9702028, at *3 (S.D. Fla. Feb. 2, 2007); *Fed. Trade Comm'n v. Simple Health Plans LLC*, No. 18-62593-CIV, 2019 WL 7371812, at *3 (S.D. Fla. Nov. 19, 2019). Moreover, the Court will not put form over substance and wishes to efficiently resolve this discovery dispute.

As an aside, the Court notes that Rule 45 is somewhat anachronistic at this point in time when the vast majority of documents are produced electronically. The advisory committee notes to the 2013 amendment of Rule 45 state that, "[u]nder the current rule, parties often agree that production, particularly of electronically stored information, be transmitted by electronic means. Such arrangements facilitate discovery, and nothing in these amendments limits the ability of parties to make such arrangements." It seems to the Court that, at this point, Rule 45 should be amended to specifically address and account for the realities of modern-day technology and the routine service of electronic document production from one district to another district.

Finally, as the Court finds that there is nothing improper about the subpoena itself and that TMTG continues to transact business in Palm Beach, the Southern District of Florida is the district where compliance is required and where the discovery will be taken. Thus, this Court has jurisdiction to hear the Motion, and the Motion is properly filed and ruled upon in this district.

### B. Whether the Motion is Timely

Southern District of Florida Local Rule 26.1(g) states that all discovery disputes must be presented to the Court within (30) days from the: "(a) original due date (or later date if extended by the Court or the parties) of the response or objection to the discovery request that is the subject of the dispute; (b) date of the deposition in which the dispute arose; or (c) date on which a party first learned of or should have learned of a purported deficiency concerning the production of discovery materials." S.D. Fla. L. R. 26.1(g). The Local Rules further state that "[f]ailure to present the dispute to the Court within that timeframe, absent a showing of good cause for the delay, may constitute a waiver of the relief sought at the Court's discretion." Here, it is undisputed that the parties were still communicating via email about the subpoena responses on June 23, 2022. [DE 1-3, Ex. K]. The Motion was then filed on July 22, 2022. The Court finds in its discretion that the Motion is timely and encourages parties to confer in good faith before filing discovery motions.

### C. The Parties' Substantive Arguments

Having reviewed the subpoena at issue and the parties' arguments closely, the Court first rejects TMTG's argument that responding to the subpoena would be overly burdensome. TMTG has provided no specific argument, evidence, or affidavit to support this objection. *See Yacht Mgmt. S. Fla., Inc. v. M/V PRIVEE*, No. 20-60849-CV, 2021 WL 767740, at *2 (S.D. Fla. Feb. 25, 2021) ("[T]he party objecting to discovery must explain the specific and particular way in which a request is vague, seeks irrelevant information, is disproportionate, or is unduly burdensome.").

Next, "[w]hile Rule 45 does not specifically identify irrelevance as a reason to quash a subpoena, it is generally accepted that the scope of discovery allowed under Rule 45 is limited by the relevancy requirement of the federal discovery rules." *Jordan v. Comm'r, Miss. Dep't of*

7

*Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020). Thus, in considering a Rule 45 subpoena discovery dispute, the Court applies the relevancy and proportionality standards in Rule 26(b)(1). *Stolfat v. Equifax Info. Servs., LLC*, No. 19-80428-CV, 2019 WL 3779778, at *2 (S.D. Fla. Aug. 12, 2019); *Malhomme v. Benet*, No. 16-81989-CIV, 2017 WL 7794293, at *1 (S.D. Fla. Apr. 13, 2017). Here, the Court finds that request #2 does not seek documents that are relevant or proportionate to the claims or defenses in the underlying action pursuant to Federal Rule of Civil Procedure 26(b)(1). Therefore, TMTG shall not be required to respond to request #2.

The Court does, however, find that requests #3, 4, 5, 6, and 7 do seek relevant and proportionate documents and also finds that TMTG and Nunes' remaining objections to these requests are without merit and are overruled. Therefore, TMTG shall be required to respond to requests #3, 4, 5, 6, and 7 on or before **August 22, 2022**. TMTG shall produce all non-privileged, responsive documents by that date and also amend its written responses to the subpoena so that they clearly state what is being produced, whether any documents are being withheld, and, if so, why the documents are being withheld. Finally, as discussed at the discovery hearing, TMTG shall only be required to produce DWAC[1] documents to the extent that they are in TMTG's possession, custody, or control.

Based on the foregoing, it is hereby **ORDERED** that Petitioners' Motion to Compel Respondent Trump Media & Technology Group Corporation's Compliance with Subpoena [DE 1] is **GRANTED IN PART AND DENIED IN PART**, as specified in this Order.

---

[1] DWAC is the abbreviation for Digital World Acquisition Corp. (DWAC), a publicly-traded special purpose acquisition. TMTG and DWAC have a merger agreement so that TMTG can eventually be publicly traded.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 15th day of August, 2022.

*William Matthewman*
WILLIAM MATTHEWMAN
United States Magistrate Judge